# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## COLUMBIA DIVISION

| | |
|---|---|
| MYLEE MYERS, individually and on behalf of all others similarly situated, ) ) ) | |
| Plaintiff, ) ) | Case No. 1:17-cv-00052 |
| v. ) ) | Judge Aleta A. Trauger |
| TRG CUSTOMER SOLUTIONS, INC. ) d/b/a IBEX GLOBAL SOLUTIONS, ) ) | |
| Defendant. ) | |

## **MEMORANDUM**

Plaintiff Mylee Myers brings this action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, individually and on behalf of all similarly situated current and former employees of the defendant, TRG Customer Solutions, Inc., doing business as IBEX Global Solutions ("IBEX"). Now before the court is the plaintiff's Motion for Conditional Certification and for the Issuance of Court-Authorized Notice (Doc. No. 8) (hereafter, "Motion to Certify"), in which Myers seeks leave to pursue this case as a collective action, under 29 U.S.C. § 216(b), and court authorization to issue notice to potential class members of this action and of their right to join it.

The motion has been fully briefed and is ripe for review. The court finds, however, that the question of whether the plaintiffs' claims must be arbitrated individually is a threshold question which, in the interest of preserving party and court resources, should be resolved before the court addresses whether conditional certification is warranted. In addition, the court is also aware that, in the related case, *Andrews v. TRG Customer Solutions*, No. 1:14-cv-00135 (M.D.

Tenn.), the parties successfully avoided litigating the issues of (1) whether arbitration agreements signed by the plaintiffs were enforceable and (2) whether the arbitration agreements precluded collective action by agreeing to collective action arbitration. The parties are strongly encouraged to engage in discussions to determine whether a similar agreed resolution is feasible in this case. Accordingly, the court will defer ruling on the Motion to Certify and direct the parties to submit a joint status report within fourteen days to notify the court of any progress regarding such discussions.

**I.     Factual and Procedural Background**

Myers filed her Motion to Certify on June 2, 2017, seeking to certify a collective action class defined as:

> All current and former hourly-paid, FLSA non-exempt call center workers at Defendant's United States call centers who at any time from June 1, 2014 through the present have worked in positions in which employees handle telephone calls on behalf of IBEX clients (for example, AT&T, Apple, DirecTV, etc.), including without limitation current and former employees who provide or provided customer service and/or technical support.

(Doc. No. 9, at 1.) Myers stipulates that this definition excludes "any employee who both received notice and opted into the nationwide class and collective action currently pending in this Court as case number 1:14-cv-00135, *Andrews et al. v. TRG Customer Solutions, Inc.*, which, as of June 1, 2017 is being actively litigated in collective arbitration." (Doc. No. 9, at 2.)

Myers avers that she received a notice in the mail about her right to join *Andrews*, and she brought the notice with her to work. She was told by senior management in the Operations Department and Human Resources Department not to join the *Andrews* case. She saw the same senior management discouraging other employees from joining the case. She states that she was intimidated and, therefore, did not join the *Andrews* case. Eventually, she did contact the lawyers representing the *Andrews* plaintiffs but was told that it was too late to opt into that case. She

states that she wishes to pursue claims on her own behalf and on behalf of other IBEX employees who were dissuaded from joining the *Andrews* case or were otherwise unable to join. She is aware of "many other IBEX workers who want to pursue their claims in this lawsuit." (Decl. of Mylee Myers, Doc. No. 10 ¶ 18.)

Defendant IBEX is a privately held company that operates more than twenty call centers across at least seven countries, including ten call centers in the United States. (Compl. ¶ 12; Decl. of Paul Inson, Doc. No. 27-1 ¶ 4.) IBEX asserts that the plaintiff signed an acknowledgement on November 3, 2013, in which she purportedly agreed to arbitrate any employment-related disputes with IBEX, specifically including any claims under the FLSA. (Doc. No. 27-6.) In addition, according to IBEX, beginning in 2015, all new customer service representatives and technical support staff members have been required to sign a revised Direct Dialogue Program and Mutual Agreement to Arbitrate ("Revised DDP"), which, besides requiring arbitration of any employment-related claims, also expressly states that each employee waives "any right" to pursue any claim on a class basis or as a collective or representative action and purports to require that all claims "be mediated and arbitrated as individual claims." (Doc. No. 27, at 4.)

Myers filed her Motion to Certify and supporting Memorandum on June 2, 2017. (Doc. Nos. 8, 9.) IBEX opposes the Motion to Certify, arguing that the arbitration agreements signed by the plaintiff and most or all of the employees she seeks to represent bar collective action. It also argues that the plaintiff fails to carry her burden of demonstrating that she is similarly situated to the putative class of other call center employees throughout the United States. (Doc. No. 27.) In the plaintiff's Reply and the defendant's Surreply (Doc. Nos. 33, 42), the parties

heatedly dispute the impact on this case of a recent Sixth Circuit decision, *National Labor Relations Board v. Alternative Entertainment, Inc.*, 858 F.3d 393 (6th Cir. 2017).

**II.     Discussion**

For purposes of her Motion to Certify, the plaintiff apparently does not dispute that she signed the DDP on November 3, 2013. She does not dispute that the DDP does not contain any language either expressly permitting or prohibiting a collective action arbitration. She also does not dispute IBEX's assertion that it has required all new customer service representatives and technical support staff members hired since late 2015 to sign the Revised DDP, which expressly states that each employee waives "any right" to pursue any claim on a class basis or as a collective or representative action and purports to require that all claims "be mediated and arbitrated as individual claims." (Doc. No. 27, at 4.)

On the basis of these agreements, IBEX argues that the plaintiff and most of the class of plaintiffs she seeks to represent are barred from pursuing a collective action in any forum. To be clear: at this stage the parties are not litigating the enforceability of the DDP and Revised DDP themselves, and the defendant has not filed a motion to compel arbitration. The defendant simply presumes the validity of the agreements and argues, based on that presumption, that the plaintiff's Motion to Certify should be denied. In response, the plaintiff argues that, even assuming the DDP and Revised DDP are otherwise valid, any provision—express or implied—prohibiting employees from pursuing an FLSA collective action in any forum is invalid as a matter of Sixth Circuit law.

Regarding the DDP, which does not include an express waiver of the right to bring a collective action, the Supreme Court has held that "it cannot be presumed the parties consented to [classwide arbitration] by simply agreeing to submit their disputes to an arbitrator." *Stolt–*

*Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 680 (2010). The Court ultimately concluded that "a party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party agreed to do so." *Id.* at 684. Based on *Stolt-Nielsen*, the Sixth Circuit has held that, when an arbitration agreement is silent regarding the availability of classwide arbitration, the agreement must be construed as prohibiting classwide arbitration. *Reed Elsevier, Inc. ex rel. LexisNexis Div. v. Crockett*, 734 F.3d 594, 596 (6th Cir. 2013); *see id.* at 599 ("The principal reason to conclude that this arbitration clause does not authorize classwide arbitration is that the clause nowhere mentions it.").

*Reed Elsevier* did not involve an employment dispute but a commercial billing dispute. In *Huffman v. Hilltop Companies*, 747 F.3d 391 (6th Cir. 2014), however, the court extended the holding in *Reed Elsevier* to apply in the employment context, specifically in the case of a plaintiff who sought to pursue a collective action under the FLSA. The court again held unequivocally that, when an "arbitration clause does not authorize classwide arbitration, . . . the plaintiffs must proceed individually." *Id.* at 398–99. Although the court did not specifically address the question, its holding presumed that such arbitration provisions are enforceable, even if they bar a plaintiff from bringing a collective action under the FLSA. *See id.* at 399 ("[T]his court's precedent indicates that the parties must proceed in arbitration on an individual basis.").

And, as regards the Revised DDP, although neither the Sixth Circuit nor the Supreme Court has expressly addressed the issue, most of the courts directly confronted with it have concluded that employers may require their employees to sign agreements that mandate arbitration of FLSA claims on an individual basis. *See, e.g.*, *Walthour v. Chipio Windshield Repair, LLC*, 745 F.3d 1326, 1327, 1334 (11th Cir. 2014) (rejecting the appellant's argument that an arbitration agreement waiving an employee's ability to bring a collective action under the

FLSA is unenforceable under the Federal Arbitration Act and affirming the district court's order compelling individual arbitration of FLSA claim); *Sutherland v. Ernst & Young LLP*, 726 F.3d 290, 296 (2d Cir. 2013) (reversing the district court's decision that a class-action waiver provision in an employee's arbitration agreement was unenforceable); *Owen v. Bristol Care, Inc.*, 702 F.3d 1050, 1052 (8th Cir. 2013); *Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 298 (5th Cir. 2004) (rejecting the appellants' claim that arbitration agreements that interfered with their right under the FLSA to proceed collectively were unenforceable and affirming the district court's order compelling individual arbitration of FLSA claims). *See also McGrew v. VCG Holding Corp.*, No. 3:16-CV-00397-TBR, 2017 WL 1147489, at *7 (W.D. Ky. Mar. 27, 2017) (holding that "arbitration agreements [with collective-action waivers] may be enforced without running afoul of the FLSA").[1]

The plaintiff argues, however, that the Sixth Circuit's holding in *National Labor Relations Board v. Alternative Entertainment, Inc.* establishes that the "arbitration agreements the Defendant seeks to enforce are unlawful and unenforceable within this Circuit." (Doc. No. 33, at 2.) In *Alternative Entertainment*, the NLRB argued, in the context of a labor dispute involving changes in certain employees' compensation and their ability to discuss their concerns about salary and wages with each other, that an arbitration provision expressly prohibiting collective action violated the National Labor Relations Act ("NLRA"), specifically 29 U.S.C. §

---

[1] The Sixth Circuit has held that "a plaintiff's right to participate in a collective action [under the FLSA] cannot normally be waived" and, therefore, that a collective-action waiver contained in an employment separation agreement was unenforceable. *Killion v. KeHE Distribs., LLC*, 761 F.3d 574, 590–91 (6th Cir. 2014). The waiver in *Killion*, however, was not part of an arbitration agreement, and the court expressly recognized that this distinction made a difference. *See id.* at 592 ("Because no arbitration agreement is present in the case before us, we find no countervailing federal policy that outweighs the policy articulated in the FLSA."). *Killion* is therefore distinguishable from the facts here and those in which collective-action waivers included in arbitration agreements were held to be enforceable.

157. *Alternative Ent'mt*, 858 F.3d at 396. The Sixth Circuit agreed. The question is whether that holding applies to waivers of the right to bring a collective action under the FLSA.

Section 7 of the NLRA, 29 U.S.C. § 157, provides that "[e]mployees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection." Further, "[c]ontractual provisions that 'illegal[ly] restrain[]' employees' rights under the NLRA are unenforceable." *Alternative Ent'mt*, 858 F.3d at 401 (quoting *Nat'l Licorice Co. v. NLRB*, 309 U.S. 350, 360, 365 (1940)). The Sixth Circuit construed "other concerted activities" to include collective "resort to administrative and judicial forums" for the purpose of "achiev[ing] more favorable terms or conditions of employment." *Alternative Ent'mt*, 585 F.3d at 402 (quoting *Eastex, Inc. v. Nat'l Labor Relations Bd.*, 437 U.S. 556, 565–66 (1978); *Brady v. Nat'l Football League*, 644 F.3d 661, 673 (8th Cir. 2011)).

The appellate court framed the issue before it as implicating both the NLRA and the Federal Arbitration Act ("FAA"), 9 U.S.C. § 2, and as requiring a determination of whether the arbitration provision was enforceable under both of those statutory schemes. The court noted that, while the question of "[w]hether federal law permits employers to require individual arbitration of employees' employment-related claims" was one of first impression in the Sixth Circuit, *Alternative Ent'mt*, 858 F.3d at 401, it had already been the subject of "robust debate" around the country. *See id.* (citing *Morris v. Ernst & Young, LLP*, 834 F.3d 975, 985–86 (9th Cir. 2016) (holding arbitration provisions mandating individual arbitration of employment-related claims violate the NLRA and fall within the FAA's saving clause); *Lewis v. Epic Sys. Corp.*, 823 F.3d 1147, 1160 (7th Cir. 2016) (same); *Murphy Oil USA, Inc. v. NLRB*, 808 F.3d 1013, 1018

(5th Cir. 2015) (upholding its earlier holding in *D.R. Horton, Inc. v. NLRB*, 737 F.3d 344 (5th Cir. 2013), that arbitration provisions mandating individual arbitration of employment-related claims do not violate the NLRA and are enforceable under the FAA); *Cellular Sales of Mo., LLC v. NLRB*, 824 F.3d 772, 776 (8th Cir. 2016) (upholding its earlier holding in *Owen v. Bristol Care, Inc.*, 702 F.3d 1050 (8th Cir. 2013), that arbitration provisions mandating individual arbitration of employment-related claims do not violate the NLRA)). On January 13, 2017, the Supreme Court granted writs of certiorari in *Morris*, *Lewis*, and *Murphy Oil* and consolidated the three cases. 137 S. Ct. 809 (2017).

The Supreme Court case remains pending. Meanwhile, however, the Sixth Circuit rejected the reasoning and conclusions of the Fifth and Eighth Circuits and instead

> join[ed] the Seventh and Ninth Circuits in holding that an arbitration provision requiring employees *covered by the NRLA* individually to arbitrate all employment-related claims is not enforceable. Such a provision violates the NLRA's guarantee of the right to collective action and, because it violates the NRLA, falls within the FAA's saving clause.

*Alternative Ent'mt*, 585 F.3d at 408 (emphasis added). The plaintiff insists that this holding invalidates the implied and express waivers at issue here. The defendant argues that the holding applies only to "employees covered by the NLRA" and "*only* to claims brought *under the NLRA*." (Doc. No. 27, at 2 (emphasis in original).)

The court is compelled to agree with the defendant. First, the NLRA defines the term "employee" to

> include any employee, and shall not be limited to the employees of a particular employer, unless this subchapter explicitly states otherwise, and shall include any individual whose work has ceased as a consequence of, or in connection with, any current labor dispute or because of any unfair labor practice . . . .

29 U.S.C. § 152(3). It appears that Myers does not qualify as an "employee" under this definition, because she is no longer employed by the defendant, and her employment did not

cease as a result of a labor dispute or an unfair labor practice. *See Allied Chem. & Alkali Workers of Am., Local Union No. 1 v. Pittsburgh Plate Glass Co.*, 404 U.S. 157, 166, 168 (1971) (holding that "the term 'employee' is not to be stretched beyond its plain meaning embracing only those who work for another for hire" and therefore "does not include retired workers"); *Merk v. Jewel Cos.*, 848 F.2d 761, 765 (7th Cir. 1988) (presuming without deciding that, "[a]lthough the statute [§ 152(3)] does not in terms exclude workers who have retired, quit, or been fired, . . . [the defendant's] former employees . . . lost their status as NLRA 'employees' when they left work for reasons other than a labor dispute or unfair labor practice" (citing *Pittsburgh Plate Glass Co.*). Because Myers is not an "employee covered by the NRLA," the holding in *Alternative Entertainment* does not extend to her arbitration agreement.

Moreover, it is not apparent to the court that a collective action under the FLSA qualifies as "concerted activit[y]" protected by the NLRA. The NLRA protects the right of employees to "to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection." 29 U.S.C. § 157. While class or collective actions might qualify as concerted activities in some contexts, the language of the statute implies that the "other concerted activities" protected by the statute are activities related to collective bargaining and the achievement of "more favorable terms or conditions of employment." *Alternative Ent'mt*, 585 F.3d at 402. Pursuing litigation for the purpose of requiring an employer to comply with federal law is not the same as achieving more favorable terms or conditions of employment by contract.

And finally, although the holdings of the Seventh and Ninth Circuits were not limited to claims brought by the NLRB or to labor disputes *per se*,[2] the holding in *Alternative Entertainment* does appear to be limited to claims brought under the NLRA—that is, claims concerning unfair labor practices that fall within the purview of the NLRB. The court reaches that conclusion based on two factors. First, the facts of *Alternative Entertainment* arose from that particular arena. It was brought by the NLRB, seeking enforcement of a prior decision and order by the NLRB in a classic labor dispute, and the court was not called upon to address the confluence of the FLSA and the FAA. Second, the Sixth Circuit did not reference *Huffman* or remotely imply that its holding had any bearing on *Huffman* or other cases arising in the employment context generally upholding arbitration provisions requiring individual rather than collective arbitration.[3]

---

[2] *Morris* and *Lewis* both involved FLSA actions brought by individual plaintiffs who sought to pursue collective actions on behalf of similarly situated employees. In both cases, the plaintiffs had signed agreements requiring them to pursue employment-related claims against the employer exclusively through arbitration and to arbitrate only as individuals and not as a collective. *Morris*, 834 F.3d at 979; *Lewis*, 823 F.3d at 1151. In *Morris*, the defendant moved to compel arbitration, and the district court ordered individual arbitration in accordance with the agreements and dismissed the case; the Ninth Circuit reversed. In *Lewis*, the district court denied the defendant's motion to compel arbitration, and the Seventh Circuit affirmed. In both cases, the appellate courts held that § 7 of the NLRA, 29 U.S.C. § 157, mandates a right to collective legal action for employees and, therefore, that a provision in an arbitration agreement in which an employee purports to waive the ability to bring a collective legal action is illegal and unenforceable under the FAA's savings clause. *Morris*, 834 F.3d at 989–90; *Lewis*, 823 F.3d at 1161.

[3] At least one district court within the Sixth Circuit has held that an arbitration clause in an employment agreement prohibiting collective action is unlawful and unenforceable under the FLSA. *Gaffers v. Kelly Servs., Inc.*, 203 F. Supp. 3d 829 (E.D. Mich. 2016), *appeal pending*, No. 16-2210 (6th Cir.). More recently, but before the Sixth Circuit issued *Alternative Entertainment*, another district court within this circuit rejected the rationale of *Gaffers* to hold that collective and class action waivers in arbitration agreements do not violate either the FLSA or the NLRA. *McGrew*, 2017 WL 1147489, at *9. In *McGrew*, the court incorrectly presumed that the Sixth Circuit would follow the Second, Fifth, and Eighth Circuits in holding that employers do not violate the NLRA by requiring employees to sign collective-action waivers. *Id.* at *7. Both decisions have been appealed, and the Sixth Circuit will presumably resolve this dispute soon.

In sum, the court concludes that *Alternative Entertainment* has no application here. Under *Huffman*, the court must conclude that an arbitration agreement that does not expressly permit collective action implicitly prohibits it. Further, the court agrees with *McGrew* that the Sixth Circuit, when directly confronted with the issue, will conclude that arbitration agreements requiring employees to bring FLSA claims individually rather than collectively are not barred by either the FLSA or the NLRA. Accordingly, if the DDP and Revised DDP are enforceable, the implied and express waivers of collective action will also be enforceable.

The defendant here has not filed a motion to compel arbitration, and the enforceability of the arbitration agreement is not before the court. In light of the fact that there is no pending motion to compel arbitration, this court, when presented with a fully briefed motion for conditional certification, would typically proceed with the consideration of whether the plaintiff has demonstrated the requisite substantial similarity to justify the granting of such a motion. Here, however, consideration of the Motion to Certify would be premature. If, in fact, Myers and other similarly situated current and former IBEX employees are subject to arbitration agreements that either implicitly or expressly require them to pursue arbitration individually rather than collectively, then certification of a collective class would be an exercise in futility.

### III. Conclusion

As noted above, the court is cognizant that, in *Andrews*, the parties were able to reach an agreement to proceed with a collective arbitration, thereby avoiding lengthy litigation of the questions of whether the arbitration agreements signed by the plaintiffs were enforceable as to each individual opt-in plaintiff and whether the defendant could compel individual arbitrations. The court encourages the parties here to try to reach a similar agreement.

Meanwhile, the court will defer ruling on the Motion to Certify and direct the parties to file a joint status report within fourteen days of the date the accompanying Order is docketed. If the parties find that they are unable to reach an agreement, the court will invite the defendant to file a motion to compel arbitration.

An appropriate Order is filed herewith.

ENTER this 24th day of August 2017.

_____
ALETA A. TRAUGER
United States District Judge