# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### COLUMBIA DIVISION

| | | |
|---|---|---|
| MYLEE MYERS, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) ) | Case No. 1:17-cv-00052 |
| v. | ) ) | Judge Aleta A. Trauger |
| TRG CUSTOMER SOLUTIONS, INC. d/b/a IBEX GLOBAL SOLUTIONS, | ) ) ) | |
| Defendant. | ) ) | |

## MEMORANDUM

Plaintiff Mylee Myers brings this action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, individually and on behalf of all similarly situated current and former employees of the defendant, TRG Customer Solutions, Inc., doing business as IBEX Global Solutions ("IBEX"). She seeks to recover unpaid wages owed to her and similarly situated employees who have worked at IBEX's call centers in the United States. Now before the court is IBEX's Motion to Compel Arbitration and to Dismiss the Action. (Doc. No. 57.) Also still pending is the plaintiff's Motion for Conditional Certification and the Issuance of Court-Supervised Notice (Doc. No. 8), the resolution of which the court previously deferred.

For the reasons set forth herein, the court will grant the defendant's motion to compel plaintiff Mylee Myers to pursue individual arbitration of her claims but will deny the motion to dismiss the case in its entirety. The Motion for Conditional Certification will be denied without prejudice.

## I.    Procedural and Factual Background

IBEX is a privately held company that operates more than twenty call centers in at least

seven countries, including ten call centers in the United States. (Compl. ¶ 12; Decl. of Paul Inson, Doc. No. 27-1 ¶ 4.) Myers resides in Steubenville, Ohio. She worked for IBEX as a customer service representative at its Pittsburgh, Pennsylvania call center from November 2013 through September 2014. She worked as a supervisor at the same call center from September 2014 through June 2015. (Compl. ¶ 6.) The Complaint does not include factual allegations regarding the circumstances under which the plaintiff's employment ended.

For purposes of the defendant's Motion to Compel, Myers does not dispute that she signed a document titled Direct Dialogue Program and Mutual Agreement to Mediate/Arbitrate Acknowledgment and Acceptance on November 3, 2013, in which she "acknowledge[d] that [she had] received and read the Direct Dialogue Program and Mutual Agreement to Mediate/Arbitrate and will abide by it as a condition of [her] employment." (Doc. No. 27-6, at 7.) The Direct Dialogue Program and Mutual Agreement to Mediate/Arbitrate ("DDP"), to which the Acknowledgment and Acceptance is attached, contains the following language:

> *The Company and Employee mutually consent to the resolution, by final and binding arbitration, of any and all claims or controversies ("claim") that the Company may have against Employee or that Employee may have against the Company . . . , whether or not arising out of the employment relationship (or its termination), including but not limited to, any claims arising out of or related to this Agreement to Arbitrate (this "Agreement") or the breach thereof.*

(Doc. No. 27-6, at 2 (emphasis in original).) The DDP states that it shall survive the termination of the employee's employment. (*Id.* at 3.) The DDP does not contain any language either expressly permitting or prohibiting a collective action arbitration.

Myers filed her Collective Action Complaint initiating this lawsuit on June 1, 2017. The next day, she filed a Motion for Conditional Certification and for the Issuance of Court-Supervised Notice to members of the conditionally certified class (Doc. No. 8). During the pendency of that motion, several putative collective-action plaintiffs filed Notices of Consent to

Become Party Plaintiff. (*See* Doc. Nos. 13-1, 17-1, 23-1, 24-1, 43-1, 46-1, 51-1, 52-1 ("I hereby consent . . . to become a party plaintiff in the above-captioned FLSA lawsuit. I understand that I will be bound by the judgment of the Court to all issues in this lawsuit, including the fairness of any settlement.").)

On August 24, 2017, the court entered an Order deferring ruling on the Motion for Conditional Certification and directing the parties to confer and discuss the possibility of reaching an agreement regarding collective action and arbitrability. The parties were directed to file a Joint Status Report within fourteen days of entry of that Order. The court noted that, if the parties concluded by that time that they would be unable to reach an agreement, the court would set a briefing schedule for the defendant's anticipated motion to compel arbitration. In the Memorandum accompanying that Order, the court notified the parties that it did not read the Sixth Circuit's ruling in *National Labor Relations Board v. Alternative Entertainment, Inc.*, 858 F.3d 393 (6th Cir. 2017), as barring waivers of the right to bring a collective action under the FLSA.

Shortly after the entry of that Order, the parties notified the court that they would not be able to reach an agreement on the issues of conditional certification and arbitrability. In light of that conclusion, the defendant filed its Motion to Compel and supporting documentation (Doc. Nos. 57, 58). In accordance with a scheduling Order entered by the court (Doc. No. 60), the plaintiff filed her Response in Opposition (Doc. No. 62), and the defendant filed a Reply (Doc. No. 65).

Thereafter, the plaintiff submitted a Notice of Filing (Doc. No. 66), giving notice of IBEX's alleged failure to comply with filing deadlines in two arbitration proceedings commenced by individuals who did not opt into this case. The plaintiff, through counsel, alleges

that "IBEX's conduct" in these arbitrations "is not an isolated matter" and that IBEX has "exhibited a pattern of failing to abide by its agreements to arbitrate." (Doc. No. 66, at 2.) IBEX filed a Response to the Notice of Filing, objecting to the Notice as an attempt to "subvert this Court's rules by disguising an unauthorized sur-reply . . . as a nebulous 'Notice of Filing'" and also generally objecting to the substance of the Notice of Filing. (Doc. No. 67.) The plaintiff responded by filing a Motion for Leave to File Reply and Notice of Filing or, in the Alternative, for Leave to File Sur-Reply and Supplemental Argument, with the attached proposed Reply. (Doc. No. 68.) This motion requests leave to reply to IBEX's Response to the plaintiff's Notice of Filing and, alternatively, requests that the court grant leave retroactively to file the Notice of Filing as a sur-reply, and to file the Reply to the Response to the Notice of Filing as a supplemental argument. The Reply itself (Doc. No. 70) responds to the factual allegations in the defendant's Response.

Although the court already granted the Motion for Leave to File Reply, the court finds that the Notice of Filing (Doc. No. 66), Response (Doc. No. 67), and Reply (Doc. No. 70) are irrelevant to consideration of the Motion to Compel and generally improper. The court has not relied on any of these filings in ruling on the Motion to Compel Arbitration.

## II.   Standard of Review

Under the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1–16, where a litigant establishes the existence of a valid agreement to arbitrate, the district court must grant the litigant's motion to compel arbitration and stay or dismiss proceedings until the completion of arbitration. *Glazer v. Lehman Bros., Inc.*, 394 F.3d 444, 451 (6th Cir. 2005) (citing 9 U.S.C. §§ 3–4). The FAA creates a strong presumption in favor of arbitration, *O.J. Distrib., Inc. v. Hornell Brewing Co.*, 340 F.3d 345, 355 (6th Cir. 2003), and any doubts regarding arbitrability must be

resolved in favor of arbitration. *Fazio v. Lehman Bros., Inc.*, 340 F.3d 386, 392 (6th Cir. 2003).

Nevertheless, an arbitration agreement may be voided for the same reasons for which any contract may be invalidated under state law, "provided the contract law applied is general and not specific to arbitration clauses." *Id.* at 393. "In order to show that the validity of the agreement is in issue, the party opposing arbitration must show a genuine issue of material fact as to the validity of the agreement to arbitrate, a showing that mirrors the summary judgment standard." *Great Earth Cos. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002) (internal quotation marks omitted).

Generally, the court must make four "threshold determinations" before compelling arbitration:

> [F]irst, it must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration.

*See Fazio*, 340 F.3d at 392 (quoting *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000)).

## III. Discussion

The defendant argues that the court should grant its Motion to Compel Arbitration because: (1) the plaintiff signed the DDP, a valid agreement to arbitrate; (2) her claims in this lawsuit fall within the scope of the arbitration agreement; and (3) the DDP does not address, and therefore precludes, arbitration as a collective action. The defendant also argues that the court should dismiss the case after referring it to arbitration, as the court's retention of jurisdiction during the pendency of arbitration would serve no purpose. The plaintiff, for her part, does not dispute that she signed the DDP when she was hired by IBEX, and she does not contest the enforceability or validity of the agreement on the basis that it lacks mutuality, was signed under

duress, or is otherwise void or voidable for any of the other standard reasons provided by state law for challenging the enforceability of a contract. Nor does she contend that her claims fall outside the scope of the agreement to arbitrate.

The only real issue is under the third of the threshold questions identified above: whether Congress intended the plaintiff's federal statutory claims under the FLSA to be non-arbitrable and, in particular, whether an arbitration agreement that does not permit the plaintiff to pursue collective-action arbitration is enforceable. In that regard, the plaintiff and the defendant agree that the DDP is silent on the topic of whether collective arbitration is permissible. Based on *Huffman v. Hilltop Companies, LLC*, 747 F.3d 391 (6th Cir. 2014), the defendant argues—and the plaintiff assumes, for purposes of the defendant's Motion to Compel—that the DDP will be construed to prohibit collective arbitration because it does not expressly permit it. The plaintiff nonetheless argues that the defendant's attempt to force her into *individual* arbitration should be denied based on *NLRB v. Alternative Entertainment, Inc.*, in which the Sixth Circuit held that "an arbitration provision requiring employees covered by the NLRA individually to arbitrate all employment-related claims is not enforceable." *Alt. Ent'mt*, 858 F.3d at 408. (*See* Doc. No. 62, at 2.)

In making this argument, the plaintiff takes issue with the court's previously expressed rationale for concluding, albeit in a non-binding opinion, that the holding in *Alternative Entertainment* does not extend to the facts here. Specifically, she contends that (1) it makes no difference whether the plaintiff is a current, as opposed to former, IBEX employee, because she was an employee at the time she signed the DDP; (2) a collective action under the FLSA qualifies as "concerted activity" protected by the National Labor Relations Act ("NLRA"); and (3) the holding in *Alternative Entertainment* is not limited to claims expressly brought under the

NLRA and applies to the facts of this case.

The plaintiff also argues that, even if the court concludes that the DDP signed by plaintiff Myers is binding, the court should compel only Myers to arbitration but grant leave to the other opt-in plaintiffs to move to amend their complaint to substitute one or more new named plaintiffs. The plaintiff insists that IBEX has not provided signed DDP agreements for several of the opt-in plaintiffs and that these individuals have no recollection of having signed any such agreement. Accordingly, she argues, the court and the opt-in plaintiffs should not simply accept IBEX's word that these opt-ins signed valid and enforceable arbitration agreements.

In its Reply, the defendant contends that, if Myer's individual claims become moot, the court should dismiss the action as a whole, leaving the opt-in plaintiffs free to pursue their own actions if they choose.

### A.    *Alternative Entertainment*

In *Alternative Entertainment*, which arose from a labor dispute involving changes in certain employees' compensation and their ability to discuss their concerns about salary and wages with each other, the Sixth Circuit held that an arbitration provision expressly prohibiting collective actions violated Section 7 of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 157.

Section 7 states that "[e]mployees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection." *Id.* Further, "[c]ontractual provisions that 'illegal[ly] restrain[]' employees' rights under the NLRA are unenforceable." *Alt. Ent'mt*, 858 F.3d at 401 (quoting *Nat'l Licorice Co. v. NLRB*, 309 U.S. 350, 360, 365 (1940)). The Sixth Circuit construed "other

concerted activities" to include collective "resort to administrative and judicial forums" for the purpose of "achiev[ing] more favorable terms or conditions of employment." *Alt. Ent'mt*, 585 F.3d at 402 (quoting *Eastex, Inc. v. NLRB*, 437 U.S. 556, 565–66 (1978); *Brady v. Nat'l Football League*, 644 F.3d 661, 673 (8th Cir. 2011)). The court framed the issue before it as implicating both the NLRA and the FAA and as requiring a determination of whether the arbitration provision, with its collective action waiver, was enforceable under both of those statutory schemes. It ultimately held that

> an arbitration provision requiring employees covered by the NRLA individually to arbitrate all employment-related claims is not enforceable. Such a provision violates the NLRA's guarantee of the right to collective action and, because it violates the NRLA, falls within the FAA's saving clause.

*Alt. Ent'mt*, 585 F.3d at 408.[1]

The few district courts within the Sixth Circuit confronted directly with the task have been divided in their interpretation of *Alternative Entertainment*. This court has previously concluded that a collective action under the FLSA does not qualify as "'concerted activit[y]' protected by the NLRA" and, therefore, that *Alternative Entertainment* has no bearing on this type of case. *Doe #1 v. Deja Vu Consulting Inc.*, No. 3:17-CV-00040, 2017 WL 3837730, at *12 (M.D. Tenn. Sept. 1, 2017). The court in *Pyle v. VXI Global Solutions, Inc.*, No. 5:17-CV-220,

---

[1] The Sixth Circuit recognized a circuit split on this issue. The Seventh and Ninth Circuits have held that arbitration provisions mandating individual arbitration of employment-related claims violate the NLRA and fall within the FAA's saving clause. *See Lewis v. Epic Sys. Corp.*, 823 F.3d 1147, 1160 (7th Cir. 2016); *Morris v. Ernst & Young, LLP*, 834 F.3d 975, 985–86 (9th Cir. 2016). The Fifth and Eighth Circuits have held, to the contrary, that arbitration provisions mandating individual arbitration of employment-related claims do not violate the NLRA and are enforceable under the FAA. *See Murphy Oil USA, Inc. v. NLRB*, 808 F.3d 1013, 1018 (5th Cir. 2015) (reaffirming its earlier holding in *D.R. Horton, Inc. v. NLRB*, 737 F.3d 344 (5th Cir. 2013)); *Cellular Sales of Mo., LLC v. NLRB*, 824 F.3d 772, 776 (8th Cir. 2016) (reaffirming its earlier holding in *Owen v. Bristol Care, Inc.*, 702 F.3d 1050 (8th Cir. 2013)). In 2017, the Supreme Court granted writs of certiorari in *Morris*, *Lewis*, and *Murphy Oil* and consolidated the three cases. 137 S. Ct. 809 (2017). That decision remains pending.

2017 WL 5132765 (N.D. Ohio Nov. 6, 2017), under factually similar circumstances, granted the defendant's motion to compel individual arbitration on the basis that "the decision in *Alternative Entertainment* was not intended to apply to arbitration agreements that are silent on the issue of classwide arbitration." *Id.* at *5. That is, where, as here, the arbitration agreement does not contain an "illegal" "express waiver of the right to classwide arbitration," the agreement is governed by those decisions from the Supreme Court and the Sixth Circuit holding that "a party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party *agreed* to do so." *Id.* at *4 (quoting *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 684 (2010)) (emphasis in original).[2] Conversely, in *Hubbard v. Dolgencorp, LLC*, No. 1:17-CV-1133-STA-EGB, 2017 WL 4323588 (W.D. Tenn. Sept. 28, 2017), the district court was unpersuaded by this court's *Doe #1* opinion and the prior Order in the case at bar. In *Hubbard*, the named plaintiffs in a putative FLSA collective action had signed voluntary arbitration agreements that contained express waivers of the right to bring a collective action. The court there found, based on *Alternative Entertainment*, that these collective action waivers violated the NLRA and were therefore unenforceable.[3]

This court holds, under the circumstances presented here, that *Alternative Entertainment* is not controlling. First, the court is persuaded by the rationale in *Pyle*. The arbitration agreement at issue here, unlike in *Alternative Entertainment*, does not contain an express waiver of the right to collective action; the DDP is instead silent on that question. The Supreme Court has held that

---

[2] The *Pyle* court also noted that it agreed with this court's conclusion in *Doe #1 v. Déjà Vu Consulting, Inc.* that "enforcing the provisions of the FLSA through a collective action does not constitute 'concerted activit[y]' under the NLRB" and, therefore, that the motion to compel arbitration in that case "could be granted for this additional reason." *Pyle*, 2017 WL 5132765, at *5 n.5.

[3] The court also concluded that the collective-action waivers were severable from the remainder of the arbitration agreements at issue. It therefore granted the defendants' motion to compel arbitration but allowed the plaintiffs to pursue their claims collectively.

"it cannot be presumed the parties consented to [classwide arbitration] by simply agreeing to submit their disputes to an arbitrator." *Stolt-Nielsen*, 559 U.S. at 680. Based on *Stolt-Nielsen*, the Sixth Circuit has repeatedly held that, when an arbitration agreement is silent regarding the availability of classwide arbitration, the agreement must be construed as prohibiting classwide arbitration. *Reed Elsevier, Inc. ex rel. LexisNexis Div. v. Crockett*, 734 F.3d 594, 596 (6th Cir. 2013) (holding in the context of a commercial billing dispute that an arbitration clause that was silent on the topic did not authorize classwide arbitration); *Huffman v. Hilltop Cos.*, 747 F.3d 391, 398–99 (6th Cir. 2014) (extending the holding in *Reed Elsevier* to apply in the case of a plaintiff who sought to pursue a collective action under the FLSA, stating: "[T]he parties' arbitration clause nowhere mentions classwide arbitration. We therefore conclude that the arbitration clause does not authorize classwide arbitration, and hold that the plaintiffs must proceed individually." (internal citation omitted)). The Sixth Circuit's decision in *Alternative Entertainment*, of course, could not overrule the Supreme Court's decision in *Stolt-Nielsen*, nor did it purport to overrule *Reed-Elsevier* or *Huffman*. These cases remain binding on this court, and *Alternative Entertainment* simply has no bearing here based on the facts presented.

Second, even if the arbitration agreement did contain an express waiver of the right to bring a collective action,[4] the court remains persuaded that a collective action under the FLSA does not qualify as "concerted activit[y]" protected by the NLRA. As this court previously observed:

---

[4] IBEX asserts that, beginning in 2015, all new customer service representatives and technical support staff members have been required to sign a revised Direct Dialogue Program and Mutual Agreement to Arbitrate ("Revised DDP"), which, besides requiring arbitration of any employment-related claims, includes an express waiver of "any right" to pursue any claim on a class basis or as a collective or representative action and purports to require that all claims "be mediated and arbitrated as individual claims." (Doc. No. 27, at 4.) Plaintiff Myers did not sign a Revised DDP, and it is unclear whether any of the opt-in plaintiffs did.

> The NLRA protects the right of employees "to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection." 29 U.S.C. § 157. While class or collective actions might qualify as concerted activities in some contexts, the language of the statute implies that the "other concerted activities" protected by the statute are activities related to collective bargaining and the achievement of "more favorable terms or conditions of employment." *Alt. Ent'mt*, 585 F.3d at 402. Pursuing litigation for the purpose of requiring an employer to comply with federal law is not the same as seeking more favorable terms or conditions of employment by contract.

*Doe #1*, 2017 WL 3837730, at *12.

And finally, the court finds that the reach of *Alternative Entertainment* is limited to claims brought "under the NLRA"—that is, claims concerning unfair labor practices that fall within the purview of the NLRB:

> The facts of *Alternative Entertainment* arose from that particular arena. It was brought by the NLRB, seeking enforcement of a prior decision and order by the NLRB in a classic labor dispute, and the court was not called upon to address the confluence of the FLSA and the FAA.

*Doe #1*, 2017 WL 3837730, at *12. For this reason, too, the court finds that *Alternative Entertainment* is not applicable here.[5]

Because the plaintiff's objection to the defendant's motion is premised entirely on the applicability of *Alternative Entertainment* to her factual circumstances, the court finds that the defendant's Motion to Compel Arbitration must be granted, and the plaintiff will be compelled to

---

[5] The court previously observed that *Alternative Entertainment* likely was not applicable to this case for another reason as well: that the plaintiff did not qualify as an employee under the NLRA, because she was no longer employed by the defendant when she filed suit, and there is no indication that her employment ceased as a result of a labor dispute or an unfair labor practice. 29 U.S.C. § 152(3). The *Hubbard* court observed that "focusing on a plaintiff's status at the time of filing suit, and not at the time she executed the arbitration agreement, would lead to perhaps inconsistent outcomes." *Hubbard*, No. 1:17-CV-1133-STA-EGB, 2017 WL 4323588, at *8 (W.D. Tenn. Sept. 28, 2017). This court agrees, but finds that the potential for inconsistent outcomes is perhaps the result of extending *Alternative Entertainment* to cases that are not clearly governed by the NLRA. Nonetheless, while it remains true that the named plaintiff in this case does not qualify as an "employee" as defined by the NLRA, the court does not rely on the plaintiff's status to reach its holding here.

pursue her claims in the context of an individual arbitration proceeding.

**B.    Whether to Dismiss**

The plaintiff contends that, even if the court determines that her individual arbitration agreement is enforceable and that the Motion to Compel Arbitration should be granted, "that still leaves the claims of the other twelve plaintiffs who have affirmatively opted into this litigation." (Doc. No. 62, at 12.) IBEX maintains that all of its employees, including the opt-in plaintiffs, have signed either a DDP that does not contain an express waiver of the right to bring a collective action, or a Revised DDP, which does. However, those waivers are not in the record as yet, and the plaintiff maintains that at least some of the opt-in plaintiffs did not sign arbitration agreements.

The plaintiff argues that, in the absence of signed, enforceable agreements to arbitrate, the opt-in plaintiffs should be permitted to proceed with this case, rather than starting over and filing a new lawsuit. She points out that permitting them to do so would further the interests of judicial economy and the preservation of party resources. (*Id.* at 13 (citing *Sogevalor, S.A. v. Penn. Cent. Corp.*, 137 F.R.D. 12, 14 (S.D. Ohio 1991) ("Requiring plaintiff . . . to file a new action upon dismissal of this case would needlessly consume the additional resources of all the parties and of the Court."); *Miller v. Jackson*, No. 3:10-cv-1078, 2011 WL 1060737, at *6 (M.D. Tenn. Mar. 21, 2011) (granting motion for leave to add new FLSA named plaintiffs, emphasizing that, unlike Rule 23 putative class members, every FLSA opt-in plaintiff is a "party plaintiff[], with equal status upon opting in"). The plaintiff requests that she be granted thirty days within which to move to amend the Complaint to add one or more new named plaintiffs.

In Reply, the defendant contends that dismissal is required because the named plaintiff's claims have become moot prior to collective-action certification. (*See* Doc. No. 65, at 7–8 (citing

*Genesis Healthcare Corp, v. Svmczvk*, 569 U.S. 66, 73 (2013) (addressing collective action claims under the FLSA and recognizing the general principal that collective-action claims become moot when the individual claims become moot); *Aleman v. Innovative Elec. Servs. L.L.C.*, No. 14-cv-868 (KBF), 2014 WL 4742726, at *3 (S.D.N.Y. Sept. 15, 2014) (applying *Genesis Healthcare* to find the collective action mooted by the dismissal of the named plaintiff's claims, "notwithstanding the fact that several potential plaintiffs ha[d] filed opt-in notices").

In *Genesis Healthcare*, the Supreme Court held that an FLSA collective action brought by a single employee was no longer justiciable when the single plaintiff's individual claim became moot as the result of an offer of judgment by the employer-defendant in an amount sufficient to make the plaintiff whole. That is, the collective action suit became moot when the individual plaintiff's individual claim became moot, because she lacked any personal interest in representing others in the action. 569 U.S. at 73. It was undisputed there, however, that no additional plaintiffs had opted in at the time the offer of judgment was made. *Id.* at 70. In reversing the appellate court's conclusion that the collective action was not mooted by the offer of judgment and that the district court should permit the plaintiff to seek "conditional certification," the Court expressly recognized that, in FLSA actions, "[t]he sole consequence of conditional certification is the sending of court-approved written notice to employees, who in turn become parties to a collective action only by filing written consent with the court, § 216(b)." *Id.* at 75 (internal citation omitted).

In other words, conditional certification, *per se*, does not have a substantial effect on a collective action, but the filing of an opt-in consent does: "These opt-in employees are party plaintiffs, unlike absent class members in a Rule 23 class action." *O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d 567, 583 (6th Cir. 2009), *abrogated on other grounds by Campbell-Ewald*

*Co. v. Gomez*, 136 S. Ct. 663 (2016). *See also Miller v. Jackson*, No. 3:10-1078, 2011 WL 1060737, at *6 (M.D. Tenn. March 21, 2011) ("[A]ll opt-in plaintiffs in an FLSA collective action are 'party plaintiffs,' with equal status upon opting-in." (citing *O'Brien*, 575 F.3d at 583)). Because there are opt-in plaintiffs in this case, unlike in *Genesis Health*, the court cannot conclude that compelling arbitration of the named plaintiff's claims automatically requires dismissal of the entire case.

Moreover, the cases upon which IBEX relies involved *mootness* and thus the court's loss of subject-matter jurisdiction. The defendant offers no support for the suggestion that granting a motion to compel arbitration of the named plaintiff's claims in this case deprives the court of subject-matter jurisdiction over the claims of opt-in plaintiffs. Here, even though the named plaintiff will be compelled to pursue her claims in an individual arbitration, the opt-in plaintiffs' claims remain pending. And it is an open question whether all of the opt-in plaintiffs signed valid and enforceable arbitration agreements. Accordingly, the court will not dismiss this action in its entirety and will instead grant the plaintiff thirty days within which to file a motion to substitute the named plaintiff with one or more appropriate plaintiffs who believe in good faith that they did not sign arbitration agreements.

## IV.     Conclusion

For the reasons set forth herein, IBEX's Motion to Compel Arbitration and to Dismiss the Action (Doc. No. 57) will be granted in part and denied in part. The court will grant that portion of the motion seeking to compel arbitration of plaintiff Mylee Myers' claims, but will deny that portion of the motion seeking dismissal of this action in its entirety. The court will grant the plaintiff thirty days within which to file a motion to amend the Complaint to substitute appropriate named plaintiffs from among the current opt-in plaintiffs. If no motion to amend is

filed within that time frame, the defendant may renew its motion to dismiss. The court will also deny without prejudice the pending Motion for Conditional Certification and the Issuance of Court-Supervised Notice (Doc. No. 8)

An appropriate Order is filed herewith.

ALETA A. TRAUGER
United States District Judge